IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOHN RODGERS BURNLEY,   )
   Plaintiff,      )
             )
v.           )    Civil Action No. 3:23CV160(RCY)
             )
ALEXANDRA M. VALENTIN, *et al.*, )
   Defendants.     )
             )

## MEMORANDUM OPINION

This matter is before the Court on a Motion to Dismiss (ECF No. 13) filed on behalf of the following Defendants:  the City of Richmond, Richmond Police Department ("RPD") Internal Affairs Division, RPD Chief of Police Richard G. Edwards, RPD Fourth Precinct Commander Donald Davenport, RPD Detective Margaret Cunningham, Richmond City Mayor Levar Stoney, Richmond City Council President Cynthia I. Newbille, Richmond City Council Vice-President Ellen F. Robertson, Richmond City Council 3rd District Councilwoman Ann-Frances Lambert, and certain Unknown Named [RPD] Police Officers (all collectively, the "City Defendants").  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court will grant in part and deny in part the Motion to Dismiss.

## I. FACTUAL HISTORY

Taking as true the facts alleged in the Complaint for purposes of the instant motion, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), the Court will recount the relevant background facts surrounding the claims of Plaintiff John Rodgers Burnley ("Plaintiff"), against the City Defendants.

Plaintiff is a Black resident of Richmond, Virginia.  (Compl. ¶ 4, ECF No. 1.)  Plaintiff purchased his home in 1999, at which time the other residents of his block were "98 per cent [B]lack [A]fro- [A]mericans . . . ."  (*Id*.)  The demographic ratio has since changed to "96 per cent [W]hite [A]mericans."  (*Id*.)  Plaintiff alleges that "[t]he [W]hites [sic] defendants named in this suit have harass[ed], intimidate[d] and discriminated against Plaintiff" (*id*.) and consistently employed racial slurs against him and told him to "move from this block" and to "move from his home or [they] will keep calling the police."  (*See generally id*. ¶¶ 5, 6, 8, 9, 11, 12, 13, 14.)

Plaintiff alleges that RPD Detective Margaret Cunningham ("Detective Cunningham" or "Cunningham") conspired with Plaintiff's White neighbors to harass Plaintiff, and specifically to "get[] the neighbors to call the Richmond Police Department on a daily basis and complain about the Plaintiff.  Cunningham had the neighbors . . . allege that Plaintiff was a 'drug dealer' and th[at] Plaintiff was a 'drug user.'"  (*Id*. ¶ 16; *see also id*. ¶¶ 5, 8.)  Plaintiff further alleges that, at various times during 2022, Detective Cunningham would sit on different neighbors' porches and use racial slurs against Plaintiff, specifically calling him "n****r" and "porch monkey."  (*Id*. ¶¶ 11, 13.)  Plaintiff alleges that Detective Cunningham is racist, and that her animus stems from both his race and the fact that he filed a complaint against her sometime previously.  (*Id*. ¶¶ 16, 20; *see id*. ¶ 13 ("n****r when I finish with you, you will wish you never filed a complaint against me, n****r").)  Plaintiff was separately told by other neighbors that Detective Cunningham "stood behind [them]" and that they and Cunningham had "got the police on [Plaintiff's] a** now." (*Id*. ¶¶ 6, 8.)  Another neighbor told Plaintiff that Detective Cunningham "dispatched a Richmond City Police Detective to watch [Plaintiff]" for two days in February of 2023.  (*Id*. ¶ 9.)

According to Plaintiff, Detective Cunningham has used her position as a supervisor with RPD to use the Unknown Named Police Officers to place Plaintiff under 24/7 police surveillance and to tailgate Plaintiff and his family when they leave the house.  (*Id*. ¶¶ 17–18, 23.)  Plaintiff

filed complaints with various state and federal agencies concerning Detective Cunningham and requested that Cunningham be investigated for her alleged "hate crimes" against him.  (*Id*. ¶¶ 20–21.)  Plaintiff alleges that RPD's Internal Affairs Division lacks any "established policy, procedure and custom" for handling such complaints, as a result of which Cunningham was able to throw the two complaints in the trash can when they were forwarded to the Fourth Precinct where Detective Cunningham works.  (*Id*. ¶ 21.)  Later in the Complaint, Plaintiff alleges that, to the extent there are general policies and orders, the Internal Affairs Division does not follow them.  (*Id*. ¶ 29.)

Plaintiff alleges that RPD Fourth Precinct Commander Donald Davenport ("Commander Davenport" or "Davenport") is Detective Cunningham's supervisor, and that Davenport acted with deliberate indifference to Plaintiff's rights when he failed to contact Plaintiff concerning Plaintiff's complaint against Cunningham.  (*Id*. ¶ 18.)  Plaintiff further alleges that Commander Davenport "fail[ed] to train, supervise and discipline Cunningham" and "allowed Cunningham to run around like a loose cannon without any type of supervision," which allowed for Cunningham's acts of discrimination against Plaintiff.  (*Id*. ¶ 19 (corrected for punctuation).)  Likewise, Plaintiff alleges that RPD Chief of Police Richard G. Edwards ("Chief Edwards" or "Edwards") did not have an established policy and procedure in place within RPD for handling complaints such as Plaintiff's, and that Chief Edwards "showed no concern" when Plaintiff informed him that, contrary to Edwards's instruction, Commander Davenport never contacted Plaintiff concerning the complaints.  (*Id*. ¶¶ 18, 22.)

Plaintiff contacted City of Richmond Mayor Levar Stoney ("Mayor Stoney") three times from November 2022 through January 2023, informing Mayor Stoney of the police misconduct he was experiencing and the need for investigation by Mayor Stoney's office.  (*Id*. ¶ 24.)  Mayor Stoney, however "ha[d] no 'established policy and procedure' in place to investigate [RPD]" and

"failed to train, supervise, and discipline" Chief Edwards.  (*Id*.)  Moreover, Mayor Stoney failed to act in the face of Plaintiff's complaints and communications.  (*Id*.)

Plaintiff similarly alleges that he contacted Richmond City Council President Cynthia I. Newbille, Richmond City Council Vice-President Ellen F. Robertson, and Richmond City Council 3rd District Councilwoman Ann-Frances Lambert (collectively, the "City Council Defendants") and requested that they look into Plaintiff's complaints regarding RPD misconduct.  (*Id*. ¶¶ 25–27.)  Plaintiff specifically alleges that an RPD officer followed Plaintiff in his vehicle from his home into downtown Richmond, where the officer almost caused an accident when they cut in front of Plaintiff's vehicle.  (*Id*. ¶ 27.)  Plaintiff alleges that he asked Newbille, Robertson and Lambert each to get the traffic footage from the intersection where this incident occurred, but all three refused to do so.  (*Id*.)  According to Plaintiff, this footage would have shown police misconduct and should have triggered an investigation.  (*Id*.)

Finally, Plaintiff alleges that the General Counsel for RPD, Sharon Carr, stated to the Richmond Times Dispatch newspaper that "it takes her 150 hours to review the 'general orders' that are currently in place" to govern RPD officer conduct.  (*Id*. ¶ 28.)  Based on this, Plaintiff alleges that "it is not possible for [Detective] Cunningham to know, follow and understand the 'required guidelines and general orders' and act accordingly" and that this density of policies is a failure of policy making that "falls in the lap of the [M]ayor" and "result[s] in liability upon the City of Richmond."  (*Id*.)

As a result of the foregoing, Plaintiff alleges that he has suffered severe depression that has required him to seek medical treatment for symptoms such as sleep apnea, fright, gritting of teeth that requires sleeping with tooth guards on . . . and biting of [the] tongue while sleep[ing]."  (*See, e.g.*, *id*. ¶ 24.)

## II. RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Complaint on March 7, 2023.  He subsequently requested *in forma pauperis* status, following approval of which the United States Marshals executed service on all Defendants.  The City Defendants filed a collective Motion to Dismiss on April 18, 2023, seeking dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and alternatively dismissal as "frivolous or malicious" pursuant to 28 U.S.C. 1915(e)(2)(B)(i).  (Mot. Dismiss, ECF No. 13.)  On May 2, 2023, Plaintiff filed a Motion for Judgment on the Pleadings (ECF No. 30) and Memorandum in Support thereof (ECF No. 31), which presented, *inter alia*, Plaintiff's arguments in opposition to the City Defendants' Motion to Dismiss.  The City Defendants properly construed this filing as Plaintiff's response and filed a Reply on May 8, 2023.  (ECF No. 40.)  The matter is accordingly ripe for review.

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of

Federal Rule 8(a)(2).  *Id.* (citations omitted).  In considering a motion to dismiss, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Labs., Inc.*, 7 F.3d at 1134 (citations omitted); *see also Martin*, 980 F.2d at 952.

With respect to a complaint filed by a *pro se* Plaintiff who avails himself of *in forma pauperis* status, a court is obligated to dismiss a complaint if "the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

The standard for evaluating the sufficiency of a *pro se* pleading is somewhat flexible because "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citation omitted).  This does not mean, however, that the court is required to accept a *pro se* plaintiff's contentions as true, *Denton v. Hernandez*, 504 U.S. 25, 32 (1992), and a court cannot ignore a clear failure to allege facts which set forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate.").  "[I]f the facts alleged are 'clearly baseless,' . . . 'fanciful,' 'fantastic,' and 'delusional,'" a court may dismiss a complaint as factually frivolous pursuant to 28 U.S.C. § 1915.  *Denton*, 504 at 32–33 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 327–28 (abrogated in part by *Twombly*, 550 U.S. at 563)).  Section 1915 notwithstanding, the Supreme Court in *Denton* cautioned that:

> An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely.  Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be 'strange, but true; for truth is always strange, [s]tranger than fiction.'"

*Id.* at 33 (quoting Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan, & W. Pratt eds. 1977)).

## IV. DISCUSSION

Plaintiff brings his suit pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and 42 U.S.C. § 2000a(a).  (Compl. ¶ 2.)  Generally speaking, Plaintiff alleges "racial profiling by the City of Richmond Police Department," supplemented by a conspiracy by and between his neighbors and RPD to interfere with Plaintiff's civil rights "because . . . Plaintiff is [B]lack with a criminal record."  (*Id.* ¶¶ 2–3.)  Although not presented in numbered counts (the below numbering is added by the Court for organizational purposes), the "Relief Sought" section of Plaintiff's Complaint states the following claims against Defendants:

Count One (against Defendants Valentin, Walburn, Brittany and Robert Bono, Andrew Joseph and Morgan Christine Nash, Jordan and Mary Niermeyer (all collectively, "Neighbor Defendants"), and Defendant Cunningham):  Conspiracy to Deprive Plaintiff of his Constitutional Rights to be Free from Hate and Terror.  (*Id.* pp. 14–16, 19.[1])

Count Two (against Defendants Davenport and Cunningham):  Conspiracy to Destroy Two Complaints Plaintiff Filed against Detective Cunningham.  (*Id.* pp. 18–19.)

Count Three (against Defendant Cunningham):  Racially motivated acts of police misconduct and racial discrimination.  (*Id.* p.19.)

Count Four (against Defendants Edwards and Davenport):  Failure to Train, Supervise, and Discipline Detective Cunningham.  (*Id.* pp. 17–18.)

Count Five (against Defendants Edwards and Davenport):  Deliberate and Reckless Indifference to Plaintiff's Constitutional Rights.  (*Id.* pp. 17–18.)

Count Six (against Defendants Edwards and Davenport):  Failure to Have Established Policy, Procedure, General Orders and Guidelines for Police Officers.  (*Id.* pp. 17–18.)

---

[1] As Plaintiff did not number the paragraphs in the "Relief Sought" section of his Complaint, the Court uses the pagination applied by the court's Electronic Case Filing ("ECF") system, and not the pagination on the bottom of Plaintiff's original Complaint.

Count Seven (against Defendant Edwards, RPD Internal Affairs, the City of Richmond, Mayor Stoney, and the City Council Defendants):  Failure to Have an Established Policy to Prevent the Destruction of Plaintiff's Complaints.  (*Id*. pp. 17, 20–22.)

Count Eight (against Defendant Davenport):  Failure to Contact Plaintiff after Being Ordered by Chief Edwards.  (*Id*. p. 18.)

Count Nine (against Defendant Cunningham):  Failure to Follow Policy and Procedure, etc., Regarding Complaints.  (*Id*. p. 19.)

Count Ten (against Unknown Named Police Officers):  Harassment & Intimidation.  (*Id*. p. 20.)

Count Eleven (against the City of Richmond and Mayor Stoney):  Failure to Train, Supervise and Discipline RPD/RPD Police Officers.  (*Id*. pp. 20, 21.)

Count Twelve (against Mayor Stoney and the City Council Defendants):  Deliberate and Reckless Indifference to Complaints Plaintiff Submitted.  (*Id*. pp. 21, 22.)

The Court will compare these counts against the statutory violations alleged by Plaintiff and attempt to discern whether Plaintiff has stated a claim against any of the City Defendants and whether the Complaint is frivolous or malicious.

As a preliminary matter, the Court agrees with the City Defendants that, under Virginia law, "an operating division of a governmental entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued," *Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd* 742 F.2d 1448 (4th Cir. 1984), and the Virginia legislature has declined to vest RPD Internal Affairs with such a capacity.  (Mem. Supp. Mot. Dismiss 1, n.1, ECF No. 14.)  Thus, Plaintiff's claim against RPD Internal Affairs (in Count Seven) fails to state a claim and will be dismissed.

## A.  42 U.S.C. § 1983

Because the standard for stating a claim under § 1983 depends on the nature of the defendant being sued, the Court will analyze Plaintiff's claims as they are stated against the various City Defendants.

8

1.  City of Richmond

"[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  Liability will arise "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983." *Id.* at 694.  The Fourth Circuit has identified four avenues through which a § 1983 plaintiff, having established a deprivation of a constitutional or federal right, may demonstrate municipal liability for a policy or custom:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens;" or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Plaintiff's two claims against the City fit into the third category, that of omission.  In Count Seven, Plaintiff alleges that the City of Richmond failed to have an established policy that would prevent the destruction of the complaints Plaintiff submitted to RPD regarding Defendant Cunningham.  (Compl. p. 20.)  In Count Eleven, Plaintiff alleges that the City failed to train, supervise, and discipline its police officers.  (*Id.*)  The remainder of the Complaint, however, is lacking in factual allegations sufficient to support these claims.

Construing Plaintiff's *pro se* Complaint liberally, *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), the Court finds that he has alleged a violation of his rights under the Equal Protection Clause.  To state an equal protection claim, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated

and that the unequal treatment was the result of intentional or purposeful discrimination." *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Here, Plaintiff has alleged that he has been harassed and discriminated against on account of his race, particularly by Defendant Cunningham, and that this treatment stands in stark contrast to his White neighbors' relationships with Cunningham. (Compl. ¶¶ 4, 11, 13.) This satisfies the constitutional harm prong. The next question, then, is whether Plaintiff has alleged sufficient facts to show that the City of Richmond's alleged failures and omissions were the "moving force [behind] the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotations omitted).

The Court does not discern any facts in Plaintiff's Complaint that support finding that the City failed to have a policy that would prevent the constitutional violation Plaintiff allegedly suffered. Plaintiff offers nothing but conclusory allegations to support his contention that no policy existed to prevent the destruction of his complaints against Detective Cunningham, and the alleged bad act does not alone demonstrate the absence of a policy. Plaintiff has therefore failed to state a claim against the City in Count Seven.

As to Count Eleven, that the City failed to train its police officers, the Court likewise finds that Plaintiff has not alleged sufficient facts to support this claim. To adequately allege a failure to train claim, a plaintiff "need not identify in detail the exact training policies in effect, or lack thereof, at the time of the events in question." *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 583 (E.D. Va. 2011). However, absent such detail, the plaintiff must allege facts that "reveal an 'obvious' need for improved personnel training." *Id.* The most common way to plead a failure to train claim is to allege "a pattern of similar constitutional violations by untrained employees." *Tobey v. Napolitano*, 808 F. Supp. 2d 830, 842 (E.D. Va. 2011) (quoting *Connick v. Thompson*, 536 U.S. 51, 62 (2011)). Alternatively, a plaintiff may plead that the constitutional

10

violation in his case "was the 'obvious' consequence of failing to provide [appropriate] training," supervision, or discipline, or to have the proper safeguarding policies in place. *Connick*, 536 U.S. at 63 (citing *City of Canton v. Harris*, 429 U.S. 378, 390 (1989)).

Plaintiff's allegations regarding the discrimination and harassment he experienced all trace back to the alleged actions of Detective Cunningham (whether by her, personally, or orchestrated by her in her role as a supervisor with RPD).  In light of that fact, the Court finds that Plaintiff has not alleged a "pattern of similar constitutional violations by untrained employees." *See Tobey*, 808 F. Supp. 2d at 842.  Rather, Plaintiff has simply alleged one long string of harassment he has reportedly suffered.  And, because such a campaign of harassment could have multiple driving factors, the Court further finds that the constitutional violation he claims is not necessarily the "'obvious' consequence" of a failure to train, such that his individual experience of harassment and discrimination could have no other explanation than a failure to train, supervise or discipline. Plaintiff therefore has also failed to state a claim against the City in Count Eleven.

### 2.  Chief Edwards

Plaintiff seeks judgment against RPD Chief Edwards in both his personal and official capacities.  To state a claim for personal liability under § 1983, a plaintiff must aver that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *Green v. Maroules*, 211 F. App'x 159, 161 (4th Cir. 2006) (citing *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 658 (4th Cir. 1998)).  To state a § 1983 official capacity claim, because such a suit is essentially a suit against the entity the defendant is an agent of, *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016), "the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell*, 436 U.S. at 694).  Moreover, because a § 1983 claim against a municipal official in his official capacity is "essentially a claim against" the municipal entity, such a claim

"should be dismissed as duplicative" where the entity is also sued. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). Based on this principle, the court will dismiss Plaintiff's official-capacity claims against Chief Edwards and consider only his claims for personal liability.[2]

In this case, Plaintiff alleged that Chief Edwards is liable for failing to train, supervise, and discipline Detective Cunningham (Count Four), deliberate and reckless indifference to Plaintiff's constitutional rights (Count Five), failing to have established policy, procedure, general orders and guidelines for police officers (Count Six), and failing to have an established policy in place to prevent the destruction of Plaintiff's complaints against Detective Cunningham (Count Seven). To support these claims, Plaintiff alleges that when he informed Chief Edwards that Defendant Davenport never got in touch with Plaintiff as Edwards had directed, to discuss Plaintiff's complaints against Detective Cunningham, Chief Edwards "showed no concern," and because the complaints were never followed up on, Plaintiff suffered additional discrimination and pain and suffering. (Compl. ¶ 22.) He further alleges that Edwards does not follow or know the required "general orders" governing police conduct. (*Id*. ¶ 28.) Plaintiff presents no additional factual allegations regarding Edwards.

As the Court has recognized, *supra*, Plaintiff's allegations of racial discrimination do (when leniently construed) state a claim for a constitutional violation. The question then becomes whether this violation was brought about by Chief Edwards. Generally speaking, liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*,

---

[2] Where Plaintiff presented official-capacity claims and the related Counts did not include the City, the Court nevertheless also construes those as claims against the City. *Rubenstein*, 825 F.3d at 223. However, because Plaintiff has alleged no facts to support his claims concerning established policy or custom and otherwise no facts to show a clear pattern of constitutionally-violative behavior, *see* City liability analysis, *supra* Part IV.A.1, Plaintiff has failed to state a claim for municipal liability or otherwise for individual, official-capacity liability, and all such claims will be dismissed. The Court will likewise dismiss all of Plaintiff's official-capacity claims against the other individual City Defendants, on the same grounds. The analysis will not be repeated for each Defendant in the subsequent sections.

275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted).  Thus, a § 1983 claim requires factual

detail about each defendant's personal involvement.  *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th

Cir. 2017).  Alternatively, a § 1983 defendant may be liable under a theory of supervisory liability.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).  Plaintiff has not provided factual

details to support Edwards' liability under either theory.

Plaintiff's allegation that Chief Edwards "showed no concern" when Plaintiff confronted

him about Davenport's lack of follow-up does not speak in any way to Edwards' personal training

(or lack thereof) of Davenport or Cunningham, or to the policies in place for police officers under

his command.  And while this single factual allegation is relevant to Plaintiff's claim of deliberate

indifference, it is not, standing alone, sufficient to state a claim under § 1983.  To succeed on a

§ 1983 claim for supervisory liability premised on deliberate indifference, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate
>     was engaged in conduct that posed "a pervasive and unreasonable risk" of
>     constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show
>     "deliberate indifference to or tacit authorization of the alleged offensive
>     practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and
>     the particular constitutional injury suffered by the plaintiff.

*Id*. (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).  As the Fourth Circuit made clear

in *Shaw*, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the

conduct is widespread, or at least has been used on several different occasions and that the conduct

engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."  *Shaw*,

13 F.3d at 799.  Plaintiff's lone allegation about Chief Edwards's lack of concern regarding

Davenport's failure to follow-up does not satisfy this pleading requirement, and the general

allegation that Edwards neither knows nor follows the controlling "general orders" likewise does

nothing to support Plaintiff's claims.  Thus, Plaintiff has failed to state a claim against Chief

Edwards on any of the grounds articulated in Counts Four, Five, Six, and Seven, and Chief Edwards will accordingly be dismissed from the action.

### 3.  Commander Davenport

Plaintiff alleges that Commander Davenport violated Plaintiff's constitutional rights through his conspiracy to destroy Plaintiff's complaints against Detective Cunningham (Count Two), failing to train, supervise, and discipline Detective Cunningham (Count Four), deliberate and reckless indifference to Plaintiff's constitutional rights (Count Five), failing to have established policy, procedure, general orders and guidelines for police officers to prevent racial profiling (Count Six), and failing to contact Plaintiff after being ordered by Chief Edwards (Count Eight).  In support of these allegations, Plaintiff states that Davenport ignored Chief Edwards's order to contact Plaintiff concerning Plaintiff's complaints about Detective Cunningham and that he "allowed Cunningham to run around like a loose cannon."  (Compl. ¶¶ 18–19).  Plaintiff also alleges that, like Edwards, Davenport neither knows nor follows the controlling "general orders." (*Id*. ¶ 28.)  The remainder of Plaintiff's allegations concerning Davenport are conclusory.

 Only Counts Two and Eight allege direct, personal conduct by Davenport.  Plaintiff presents no facts to support his conspiracy claim (Count Two) against Davenport, however, and his allegation that Davenport failed to contact him (Count Eight) does not plausibly give rise to a constitutional violation.

The remainder of Plaintiff's claims against Davenport (failure to train and supervise Cunningham, deliberate indifference, and failure to have established policies and procedures) fall into the supervisory liability category.  No factual allegations support Plaintiff's claim against Davenport for failing to have established policies and procedures (Count Six), but Plaintiff did provide facts in support of the other two counts.  Construed liberally, the facts in the Complaint allege that Davenport had knowledge of Plaintiff's complaints of Cunningham's ongoing

violations of his rights, via the communications with Chief Edwards. (Compl. ¶ 18.) Despite this knowledge, Davenport took no steps to engage with Plaintiff and instead allowed Cunningham to continue operating without supervision or discipline, which resulted in the racial discrimination allegedly suffered by Plaintiff. (*Id.* ¶ 19.) Taken together and read in the light most favorable to Plaintiff, the allegations do appear to state a claim for supervisory liability against Davenport for failing to supervise Cunningham and exhibiting deliberate indifference to the constitutional violations committed by Cunningham and potentially other officers. *See Shaw*, *supra*.

The Court further finds that Plaintiff's allegations are sufficient to overcome Davenport's defense of qualified immunity at this preliminary stage. When a government official is sued in their individual capacity, qualified immunity protects them "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, the Court must ask both whether a constitutional violation occurred and whether the right violated was "clearly established" at the time of the official's conduct. *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). A right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004). Either way, these sources "must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (per curiam). To determine whether the question is beyond debate, the right at issue must be defined with specificity. *Sharpe v. Winterville Pol. Dept.*, 59 F.4th 674 (4th Cir. 2023) (citing *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019)). The two prongs of the qualified immunity analysis (identifying the constitutional right and determining whether it

was clearly established) may be analyzed in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The constitutional violation alleged in this case is the violation of Plaintiff's Fourteenth Amendment Equal Protection right to be free from racial discrimination and race-based harassment by the police.  This right has been recognized by multiple Circuit Courts of Appeals, including the Fourth Circuit.  *See Greene v. Maroules*, 211 F. App'x 159, 162 (4th Cir. 2006); *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989) ("The Constitution does not tolerate intentional police harassment of racial minorities.") (abrogated on other grounds, *Harper v. Harris Cnty, Tex*., 21 F.3d 597 (5th Cir. 1994)); *Smith v. Thornburg*, 136 F. 3d 1070, 1089 (6th Cir. 1998) (recognizing a right to be free from racially motivated verbal abuse and harassment by police officers).  Based on this precedent, the Court holds that Plaintiff's constitutional right to be free of police harassment and discrimination was clearly established at the time of the alleged deprivation, and thus, on the face of the Complaint, Defendant Davenport is not entitled to qualified immunity at this time.  The Court will therefore deny the Motion to Dismiss as to the supervisory liability claims in Counts Four and Five against Davenport.

### 4.  Detective Cunningham

The Complaint claims that Detective Cunningham engaged in racially motivated acts of police misconduct and racial discrimination (Count Three) and failed to follow RPD guidelines, policy, procedure, and general orders regarding the handling of complaints (Count Nine).[3]  In contrast to the factual support (or lack thereof) provided in connection to his other claims, Plaintiff includes ample factual allegations about Detective Cunningham.  He alleges that Cunningham had

---

[3] The Complaint also alleges that Cunningham conspired with the Neighbor Defendants to deprive Plaintiff of his constitutional right to be free from hate and terror (Count One) and conspired with Davenport to destroy the two complaints he filed against her with RPD (Count Two), but the Court reserves its analysis of these allegations for the 42 U.S.C. § 1985 section, *infra*.

his neighbors harass Plaintiff and call the police on him on a daily basis and make false accusations about him.  (Compl. ¶¶ 5, 8.)  He further alleges that Cunningham would use racial slurs against Plaintiff while sitting on neighbors' porches (*id.* ¶¶ 11, 13), and that she used her authority within RPD to dispatch patrol cars to tail and harass Plaintiff and his family.  (*Id.* ¶¶ 17–18, 23.)  Plaintiff further alleges that Cunningham threw two complaints Plaintiff filed against her with RPD into the trash.  (*Id.* ¶ 21.)

With respect to Count Three, the Court finds that, on the basis of the above allegations, Plaintiff has alleged sufficient facts to state a § 1983 claim for personal liability against Detective Cunningham.  Specifically, Plaintiff has alleged that Cunningham, a RPD Detective, deprived him of the equal protection of the laws of the United States when she treated him differently from his White neighbors by orchestrating and participating in a campaign of racially motivated harassment.  Applying the liberal pleading standard due to *pro se* litigants, the Court finds that Plaintiff has stated an equal protection claim and thus a § 1983 claim against Cunningham for the alleged racially motivated police misconduct and racial discrimination (Count Three).  *See Green v. Maroules*, 211 F. App'x 159, 161 (4th Cir. 2006) (liberally construing and reversing the dismissal of a *pro se* § 1983 claim alleging an Equal Protection Clause violation, "[b]ecause it is not apparent 'beyond doubt' that [the plaintiff] cannot prove a set of facts in support of [her] claim that would entitle her to relief.") (citing *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).

And, for the same reasons that the Court found that Commander Davenport could not claim qualified immunity at this time, it holds the same to be true for Detective Cunningham, as the rights allegedly violated were clearly established at the time the harassment and discrimination occurred.  *See* Part IV.A.3, *supra*.

The Court will grant the Motion to Dismiss as to Count Nine, however, as Plaintiff does not provide sufficient factual allegations to sustain this claim.  Nothing in the Complaint indicates

that RPD had specific policies, guidelines, procedures, and/or general orders governing the handling of civilian complaints—in fact, Plaintiff alleges in other parts of the Complaint that other Defendants should be held liable for *failing* to have such policies.  Accordingly, nothing but Plaintiff's conclusory allegations support this claim, and the Court will dismiss Count Nine against Defendant Cunningham.

     5. Mayor Stoney & the City Council Defendants

Plaintiff seeks to hold Mayor Stoney liable for his failure to have an established policy to prevent the destruction of Plaintiff's complaint (Count Seven), failure to train, supervise and discipline RPD officers (Count Eleven), and for deliberate and reckless indifference to the complaints Plaintiff submitted (Count Twelve).  Similarly, he seeks to hold the City Council Defendants for their failure to have an established policy to prevent the destruction of Plaintiff's complaint (Count Seven) and their deliberate and reckless indifference to the complaints Plaintiff submitted to their offices (Count Twelve).  Plaintiff provides few factual allegations to support these claims, beyond the fact of his having filed complaints with the Mayor and City Council Defendants concerning Detective Cunningham's actions.

Contrary to Plaintiff's conclusory allegation that the Mayor is the "gatekeeper" for the City of Richmond, the Mayor has no functional control over the operations of the RPD, nor over the training of the Chief of Police or other RPD officers.  And because the Mayor does not hold a supervisory role over Detective Cunningham, the supervisory liability analysis available under § 1983 is not available for Plaintiff to claim that the Mayor caused the deprivation of Plaintiff's equal protection-rights through deliberate indifference to Plaintiff's complaints.  The same is true on all points for the City Council Defendants.  Accordingly, Plaintiff has failed to state any § 1983 claim against the Mayor or the City Council Defendants, and the Motion to Dismiss will be granted as to Plaintiff's claims against them.

6.  Unknown Named Police Officers

Plaintiff claims that, in addition to Defendant Cunningham, certain Unknown Named Police Officers ("Unknown Officers") engaged in harassing and intimidating Plaintiff (Count Ten).  Plaintiff does provide some factual allegations in support of this claim, such as the fact that Unknown Officers followed him and his family when they left their home to attend church and that Unknown Officers surveilled Plaintiff all day long.  (Compl. ¶¶ 18–19.)  However, Plaintiff provides no allegations to suggest that these Unknown Officers engaged in this behavior based on some racially discriminatory motive.  In fact, he directly alleges that they did so at the direction of Defendant Cunningham.  (*Id*.)  While the continual presence of officers may certainly have been stressful for Plaintiff, nothing in the Complaint suggests that the officers themselves engaged in any violations of constitutional or federal law.  Accordingly, the Court finds that Plaintiff has failed to state a § 1983 claim against the Unknown Named Police Officers, and Count Ten will be dismissed.

**B.  42 U.S.C. § 1985(3)**

Section 1985 of the United States Code, Chapter 42, provides a cause of action for individuals who have been the subject of a conspiracy to deprive them of the equal protection of the laws of the United States.  To establish a cause of action under § 1985(3), a plaintiff must allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.  Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights.

*Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995) (citations omitted).  Plaintiff's Complaint states two claims for relief predicated on conspiracy: first, that Defendant Cunningham conspired

19

with the Neighbor Defendants to deprive Plaintiff of his constitutional rights (Count One), and second, that Cunningham and Davenport conspired to destroy the complaints Plaintiff filed with RPD against Cunningham (Count Two).  Plaintiff states ample facts in support of the first count of conspiracy; his second count is less well supported, however.

As to Count One, Plaintiff alleges that Cunningham conspired with his neighbors to get the neighbors to call RPD on a daily basis to complain about Plaintiff and to falsely allege that he is a drug dealer and drug user.  (Compl. ¶ 16.)  Plaintiff also alleges that Cunningham and the Neighbor Defendants all engaged in a campaign of harassment that was racially motivated, as evidenced by the racial epithets and slurs they employed.  (*Id*. ¶¶ 4–6, 8–9, 11–14.)  Based on this harassment and discrimination, Plaintiff alleges that he was deprived "of his equal rights and protections under the law to live in society without being harassed by the [RPD] every time [he] comes out of his house."  (*Id*. ¶ 16.)  And, as a result, Plaintiff alleges that he suffered actual harm, including severe depression that requires long-term medical treatment.  (*See, e.g.*, *id*. ¶¶ 6, 9, 11, 13.)

Defendants argue that Plaintiff does not allege the requisite details to establish a "meeting of the minds" on the part of Defendants.  (Mem. Supp. Mot. Dismiss 14 (citing *Smith v. Town of South Hill*, 611 F. Supp. 3d 148, 187 (E.D. Va. 2020).  The Court disagrees.  Plaintiff has identified the specific members of the conspiracy, their apparent goal (to harass and intimidate him, using the weight of RPD as wielded by Defendant Cunningham, until he moves from his home), interactions among the Defendants, and the steps taken by each Defendant in furtherance of the conspiracy.  Taking all the alleged facts as true, the Court finds that, when read liberally as it must be, Plaintiff's Complaint does state a claim for § 1985(3) conspiracy against Defendant Cunningham.  *See Maroules*, 211 F. App'x at 163 (reversing the dismissal for failure to state a claim of a *pro se* § 1985(3) claim, where the plaintiff alleged "that her civil liberties were injured, resulting in physical and mental harm, by acts of the defendants, who behaved consistently with

their conspiracy to falsely arrest her."). Plaintiff has alleged sufficient "meeting of the minds" and supporting facts concerning the members, communications amongst the conspirators, and the general shared purpose of the conspiracy. *Id*. at 162–63. *Cf. A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (affirming the dismissal of a § 1985 conspiracy claim where the plaintiff failed to allege facts concerning "the persons who agreed to the alleged conspiracy, the specific communications among the conspirators, or the manner in which such communications were made.") And, once again, for the reasons set forth *supra*, the Court holds the Cunningham cannot claim qualified immunity for the alleged racially discriminatory harassment as to this claim.

Turning to Count Two, although Plaintiff couches his claim as another conspiracy count, he provides no additional facts to support the alleged conspiracy to destroy his complaints. None of Plaintiff's allegations even suggest Defendant Davenport's involvement in the destruction of Plaintiff's complaints against Cunningham, other than the conclusory allegation asserting to the conspiracy itself. Accordingly, Plaintiff has failed to state a claim as to Count Two, and that count will be dismissed.

## C.  42 U.S.C. § 2000a(a)

United States Code Chapter 42, § 2000a(a), provides that "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." The Code goes on to define "place of public accommodation" as certain enumerated establishments. 42 U.S.C. § 2000a(b). Notably, Plaintiff has not identified any place of public accommodation where he has been denied the full benefits and enjoyment otherwise available to the public. For this critical deficiency, to the extent that Plaintiff sought to rest any of his claims on 42 U.S.C. § 2000a, the City Defendants' Motion to Dismiss will be granted.

**D. 28 U.S.C. § 1915(e)(2)(B)(i)**

The statute authorizing *in forma pauperis* actions, 28 U.S.C. § 1915, provides that Courts must dismiss cases that are frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i). While the Court recognizes that Plaintiff has a long history of filing *pro se*—and often unsuccessful—civil rights-based litigation (*see* Mem. Supp. Mot. Dismiss 2, n.2), that does not automatically render Plaintiff's well-pleaded allegations incredible and/or subject to dismissal. *See Denton*, 504 at 33 (quoted *supra* Part III). Because the Court has found that Plaintiff has in fact stated a claim as to Defendants Davenport and Cunningham, the Court rejects the City Defendants' argument that Plaintiff's Complaint is frivolous and malicious and declines to dismiss the case based on § 1915.

## V. CONCLUSION

For the reasons detailed above, Defendant's Motion to Dismiss (ECF No. 13) will be granted in part and denied in part.

An appropriate Order shall issue.

_____ /s/ _____

Roderick C. Young
United States District Judge

Richmond, Virginia
Date: July 17, 2023