**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JOHN RODGERS BURNLEY,
      Plaintiff,

v.                                 Civil Action No.  3:23-cv-00160 (RCY)

ALEXANDRA M. VALENTIN, *et al.*,
      Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Jeffrey W. Walburn's ("Walburn") Motion for an Award of Attorney Fees and Costs (the "Motion for Attorneys' Fees," ECF No. 199) and the accompanying Memorandum in Support (ECF No. 200). Having considered the Motion for Attorneys' Fees and related briefings, the Court will GRANT IN PART and DENY IN PART Walburn's request for an award of attorney fees and costs (ECF No. 199). After making downward adjustments to the total hours requested, the Court shall award reasonable fees and expenses of **$7,818.46** in favor of Walburn and against Plaintiff John Rodgers Burnley ("Burnley"). Additionally, Burnley's request for judicial recusal is DENIED.

### I.     BACKGROUND AND PROCEDURAL HISTORY

On March 7, 2023, Burnley filed a Complaint against Walburn, *et al.*, alleging claims under 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000a(a). (ECF No. 1.) The parties appeared before the undersigned on November 17, 2023 for a judicial settlement conference at which the parties entered into a Settlement and Mutual Agreement (the "Settlement Agreement") dated November 17, 2023. (ECF No. 200-3.) Paragraph nine of the Settlement Agreement provides, *inter alia*, that "in the event that any litigation is commenced in connection with . . . enforcement of this Agreement or to enforce any obligation imposed . . . the prevailing Party or Parties . . . shall be

entitled to recover their reasonable attorney's fees . . . from the non-prevailing Party or Parties." (*Id.* at 3.)[1]

On August 27, 2024, Defendants Valentin and Walburn filed a Motion to Enforce Settlement Agreement, alleging that Burnley made "defamatory statements to Walburn's new employer" in "blatant contravention of the Settlement Agreement." (ECF No. 163 at 3-4.) By Order dated October 1, 2024, the Court requested that Defendants provide "additional briefing certifying that they ha[d] satisfied the Parties' Settlement Agreement conditions providing for Notice of Breach." (ECF No. 164.) On October 7, 2024, Valentin and Walburn moved to withdraw their Motion to Enforce, which the Court subsequently granted on October 8, 2024. (ECF No. 166.)

On April 16, 2025, Walburn filed a Motion to Enforce the Settlement Agreement and accompanying Memorandum in Support, alleging that Burnley had made "defamatory statements to Walburn's new employer" in "blatant contravention" of the Settlement Agreement. (ECF Nos. 167, 168.) The District Court referred the matter to the undersigned for full disposition, in accordance with the terms of the Settlement Agreement. (ECF No. 169.)[2] The Court entered an Order and Notice directing Burnley to respond by June 10, 2025, and to certify compliance with the Settlement Agreement's notice requirements. (ECF No. 172.) On May 27, 2025, Burnley filed responses to the Motions to Enforce. (ECF Nos. 173, 174, 175, 176.) On the same day, Burnley filed appeals in both the present matter and Civil Action No. 3:25cv210, all of which were dismissed by the Fourth Circuit. (ECF Nos. 177, 180.)

---

[1] The Court employs the pagination utilized by the CM/ECF system.
[2] Defendant Cunningham filed a separate Motion to Enforce (ECF No. 170) that the Court then denied in part as moot and denied in part without prejudice. (ECF Nos. 195, 196.) Cunningham's motion is not relevant to Walburn's fee petition.

By Order dated February 9, 2026, the Court ordered Walburn to file supplemental briefing addressing the authenticity of a voice recording submitted as Exhibit B. (ECF No. 184.) After the parties submitted supplemental briefing, the Court held an evidentiary hearing on March 4, 2026. (ECF No. 193.) By Memorandum Opinion dated March 18, 2026, the Court granted Walburn's Motion to Enforce (ECF No. 167) and awarded reasonable attorneys' fees and costs against Burnley in an amount subject to a reasonableness review. (ECF Nos. 195, 196.)

On April 10, 2026, Walburn filed his Motion for Attorneys' Fees and accompanying Memorandum in Support, seeking "reasonable attorney costs and fees in the amount of $9,410.46 . . . ." (ECF Nos. 199, 200.) In this submission, Walburn attached two exhibits: (1) an affidavit from his attorney, Julie S. Palmer, and (2) a "Matter Ledger Report" containing redactions "made pursuant to the attorney-client privilege and work product doctrine." (ECF Nos. 200-1, 200-2.) In her affidavit, Ms. Palmer noted that "[u]nredacted copies of these billing records are available for *in camera* review by the Court if requested." (ECF No. 200-1 at 3.) On April 23, 2026, Burnley filed his Response in Opposition and the accompanying Memorandum in Support. (ECF Nos. 201, 202),[3] and Walburn filed his Reply on April 30, 2026. (ECF No. 203.)

Upon review of Walburn's fee petition, the Court directed Walburn to file either: (1) an unredacted Matter Ledger Report or (2) to submit an unredacted copy directly to chambers for review *in camera*. (ECF No. 204.) As part of this Order, the Court provided Burnley an opportunity to file a supplemental response in opposition based on Walburn's unredacted Matter Ledger

---

[3] Burnley styled this submission as a "Motion to Dismiss Motion to Enforce and Award of Attorney Fees." (ECF No. 201.) However, the Court will construe Burnley's submission as a Response in Opposition based on the Court's discretion to liberally construe pro se filings. Accordingly, the Court will take no action on Walburn's Response in Opposition to Burnley's "Motion to Dismiss" (ECF No. 205) to the extent that it responds to what might have been construed as a separate motion.

Report. (*Id.*) On May 8, 2026, Walburn filed a supplemental ledger removing the redactions he claimed were to protect privileged attorney-client communications and maintaining redactions only for those entries which describe: (1) matters for which Walburn is not seeking any award and the billing totals for such entries; (2) Walburn's counsel's street address in Charlottesville, Virginia; (3) the name of a non-party insurance adjuster. (ECF No. 206 at 2.)

On May 14, 2026, Burnley filed his Supplemental Response in Opposition to Walburn's Fee Petition (ECF Nos. 207, 208), [4] and Walburn filed his Supplemental Reply on May 21, 2026 (ECF No. 209).

## II.    ADDRESSING BURNLEY'S ARGUMENTS IN OPPOSITION

In his Response in Opposition and Supplemental Response in Opposition, Burnley argues that Walburn's request for attorney fees in the amount of $9,410.46 is "'unreasonable and excessive' and would impose hardship upon [him] and his family." (ECF No. 202 at 1.) In support, he claims the following:

1.  Walburn's attorneys are not entitled to their attorneys' fees because they have been paid by Walburn's Homeowner's Insurance Policy carrier, which is not a party to this matter, has not entered its appearance on the docket, and therefore lacks standing to recover its attorneys' fees. (ECF No. 202 at 1, 2, 6);

2.  Burnley's status of filing the underlying lawsuit *in forma pauperis* necessarily precludes the

---

[4] Burnley again styled this submission as a "Motion to Dismiss Award of Attorney Fees and Motion to Dismiss Motion to Enforce." (ECF No. 207.) The Court again construes Burnley's submission as a Supplemental Response in Opposition consistent with the Court's discretion to liberally construe pro se filings and pursuant to the requirements set forth in the Court's May 5, 2026 Order. (*See* ECF No. 204.)

Court from ordering him to pay Walburn's attorney's fees (ECF No. 202 at 3-4);

3. The requested attorneys' fees erroneously include the costs of representing Alexandra Valentin, who was not a party to the underlying Motion to Enforce (ECF No. 202 at 3; 208 at 1);

4. The Court should recuse itself because of the manner it conducted the settlement conference (ECF No. 202 at 5-6); and;

5. Walburn violated the Court's May 5, 2026 Memorandum Order because he failed to serve Burnley with the Declaration of Benjamin P. Abel and supplemental Matter Ledger Report (ECF No. 208 at 2-3).[5]

The Court briefly addresses each argument before turning to the award of attorneys' fees.

## A.  The Involvement of Walburn's Insurance Company

At the outset, the Court notes that the underlying case involved a dispute between neighbors over allegations of harassment and racial discrimination. Here, as in many cases involving homeowner-related disputes, Walburn's insurer provided liability insurance coverage, which included legal representation. (Aff. Julie S. Palmer, ECF No. 200-1 ¶ 2 ("Harman, Claytor, Corrigan & Wellman was retained . . . by the insurance company for Jeffrey W. Walburn to defend his interests in this matter.").) His insurer "incurred $9,410.46 in attorney's fees and expenses related to litigating Defendants' Motion to Enforce Settlement Agreement in this matter." (*Id.* ¶ 10.) Burnley now argues that the insurer, by virtue of its contractual relationship with Walburn, "became a third-party when [it] intervened . . . to protect Walburn and [its] interest and to seek

---

[5] In addition to these arguments, Burnley reiterates grievances previously addressed in his oppositional pleadings which the Court need not address at this stage. (*See* ECF No. 208 at 2 (alleging that the Court abused its discretion in allowing the Roskam and Walburn affidavits into evidence during the evidentiary hearing).)

reimbursement." (ECF No. 202 at 5.) By failing to file a notice of appearance on behalf of the interested third party, Burnley argues, Walburn's insurer cannot now seek an award for Walburn's attorney's fees. (ECF No. 202 at 5.)

In Virginia, insurers are not parties to lawsuits absent claims directly against the insurance companies. *See, e.g.*, *Brown v. Slenker*, 197 F. Supp. 2d 497, 500 n.4 (E.D. Va. 2002) ("Virginia is not a direct action state; insurers are not parties to lawsuits filed against their insureds."). Here, Walburn's insurer is not a party to the action simply because it entered into an insurance agreement with Walburn, for which Walburn personally contributed valuable consideration. Instead, the Settlement Agreement between Walburn and Burnley remains the operative document before the Court. In the Settlement Agreement, Walburn and Burnley affirmatively agreed that:

> in the event that any litigation is commenced in connection with the . . . enforcement of this Agreement or to enforce an obligation imposed by or contained in this Agreement, the prevailing Party or Parties shall be entitled to recover their reasonable attorney's fees, expenses, disbursements, and costs of suit, including appellate fees and costs, from the non-prevailing Party or Parties.

(ECF No. 200-3 at 3.) The Court has already found that Walburn is the prevailing party and is entitled to his "reasonable attorney's fees[.]" That Walburn has a contractual relationship with his insurer to advance or otherwise pay for the costs of his legal defense is of no moment; Walburn, as signatory to the Settlement Agreement, is contractually entitled to recover his "reasonable attorney's fees" from the non-prevailing party, Burnley.

## B.    The Applicability of the American Rule

Likewise, Burnley's arguments that the American Rule precludes Walburn from recovering his reasonable attorney's fees through this enforcement action is unavailing given the express contractual provision set forth in the Settlement Agreement. As the Fourth Circuit explained, the American Rule is displaced when parties execute a contract that allows for an award

6

of attorneys' fees to the prevailing party. *See, e.g.*, *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999) ("In general, absent a contractual or statutory provision to the contrary, a prevailing party cannot recover attorneys' fees and expenses from a losing party."). Here, the parties clearly contemplated whether to adhere to or divert from the principle that each party is responsible for its own attorney's fees when they drew up the provision entitled "Fees and Costs" in the Settlement Agreement. (*See* ECF No. 200-3 at 3.) That provision expressly provides that:

> Except as otherwise specifically stated in this Agreement, each Party will bear his or her own respective fees and costs incurred in connection with the Lawsuit or the preparation and execution of this Agreement, including each Party's own attorney's fees . . . and costs . . . . However, in the event that any litigation is commenced in connection with the . . . enforcement of this Agreement . . , the prevailing Party or Parties shall be entitled to recover their reasonable attorney's fees . . . from the non-prevailing Party or Parties.

*Id.* Thus, there can be no doubt that the parties intended to supplant the American Rule in the event one of them prevails in a Motion to Enforce the Settlement Agreement, as is the case here.

Moreover, the Settlement Agreement does not make an exception for a party proceeding *pro se* and *in forma pauperis*. Contrary to Burnley's contention, the Fourth Circuit has explicitly stated that "28 U.S.C. § 1915 authorizes the assessment of costs," against "litigants who have been granted leave to proceed in forma pauperis." *Flint v. Haynes*, 651 F.2d 970, 971 (4th Cir. 1981). Nonetheless, the "court has broad discretion to reduce the fee award in light of mitigating factors, such as the difficulty of the case, the motivation of the plaintiff, and the relative economic status of the litigants." *Arnold v. Burger King Corp.*, 719 F.2d 63, 68 (4th Cir. 1983). Here, the Court recognizes that Burnley has proceeded as a litigant filing *in forma pauperis* in this matter. However, his willful breach of the Settlement Agreement by calling Walburn's employer despite

clear proscription in the contract demonstrates that Burnley both knew and appreciated the risk of his conduct. Further, Burnley did not take accountability for his actions, show contrition for them, or recognize the considerable expense incurred by Walburn for Burnley's conduct. Therefore, Burnley's status as a litigant proceeding *in forma pauperis* does not preclude the Court from awarding attorney's fees pursuant to the contract Burnley signed.

### C.       The Disputed Ledger Entries That Include Alexandra Valentin

Burnley points out that Walburn's Matter Ledger Report includes tasks taken on behalf of Alexandra Valentin, who is not party to the motion to enforce, on February 12, 2026, February 26, 2026, and February 27, 2026 [collectively hereinafter, the "Disputed Entries"]. (ECF No. 202 at 3.) The Disputed Entries purportedly relate to email correspondence sent to Walburn and Valentin requesting and disseminating information about the Motion to Enforce. (*Id.*) In response, Walburn notes that Valentin was an original Defendant and co-movant in the first motion to enforce, and that "the work attributed to representing Valentin was equally attributable to representing Walburn and is subject to award." (ECF No. 203 at 3 n.3.) He adds that "Burnley fails to identify any fee or cost attributable to Valentin's representation alone." (*Id.*).

As to the latter point, the Court notes that it is Walburn's burden, not Burnley's, to provide adequate records in support of his request for reasonable attorneys' fees. *See Banks v. City of Virginia Beach*, No. 2:24-CV-149, 2026 WL 500857, at *1 (E.D. Va. Feb. 23, 2026). Further, while the Court understands that Valentin previously moved to enforce the settlement agreement, Valentin withdrew that motion on October 7, 2024. (ECF No. 165.) Nonetheless, the entries sufficiently describe work done on Walburn's behalf to progress the Motion to Enforce. (*See* ECF No. 206-1.) Specifically, these emails requested evidence and information specifically relating to the authenticity of the voice recording, as well as providing details about the evidentiary hearing

to Walburn and Valentin. (ECF No. 206-1 at 2, 3.) Therefore, the Court finds that Walburn has

sufficiently provided adequate records showing that these entries are directly relevant to the legal

work done on his behalf to prevail on the Motion to Enforce.

> **D.      Burnley's Request for the Judicial Recusal is Denied**

Burnley raises, for the first time, an argument that the Court must recuse itself because

Burnley was:

> prejudiced at the evidentiary hearing on March 4, 2026 as a result of
> . . . prejudicial remarks made by Judge Colombell on November 17,
> 2023. Therefore, [Burnley] ask[s] Judge Colombell to recuse
> himself from this case where he have [sic] shown to have a personal
> interest in its outcome.

(ECF No. 202 at 5-6 (cleaned up).) Curiously, and only after the Court found in favor of Walburn

on his Motion to Enforce, Burnley now claims that the undersigned's remarks during the parties'

settlement conference nearly three years ago are disqualifying under 28 U.S.C. Section 455(a).

However, Burnley has not adequately explained or provided sufficient support to substantiate his

claims that recusal is required under § 445(a), and the Court need not entertain mere conclusory

remarks about personal bias or prejudice. Moreover, even if Burnley's serious allegations

regarding this Court's impartiality are made in good faith, such behavior on the part of a settlement

judge does not rise to a level warranting recusal. *See, e.g.*, *Belue v. Leventhal*, 640 F.3d 567, 573

(4th Cir. 2011)  ("If it were otherwise—if strong views on a matter were disqualifying—then a

judge would hardly have the freedom to be a judge . . . '[E]xpressions of impatience,

dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and

women, even after having been confirmed as federal judges, sometimes display,' are generally

insufficient to support a recusal motion.") (quoting *Liteky v. United States*, 510 U.S. 540, 555-56

(1994)). Moreover, following the settlement conference, Burnley expressly agreed that the

undersigned would retain jurisdiction to enforce the Settlement Agreement, which necessarily indicates that the manner in which the undersigned conducted the settlement conference was not disqualifying. Therefore, Burnley's request for judicial recusal is DENIED.

        E.      **Service of the Declaration of Benjamin P. Abel and the Supplemental Matter Ledger Report**

Finally, Burnley makes a series of grievances that do not pertain to the substance of the Matter Ledger Report or its supplement; rather, they relate to the way it was produced to him and filed. (ECF No. 208 at 2-3.) He accuses Walburn's attorney of failing to serve him, via mail, with a copy of the Declaration of Benjamin P. Abel (ECF No. 206) and the Supplemental Matter Ledger Report (ECF No. 206-1) (ECF No. 208 at 2.) In response, Walburn claims that he filed the Declaration of Benjamin P. Abel and the supplemental exhibit "on May 8, 2026, at approximately 6:46pm ET. Because this filing occurred on a Friday evening and after hours, [Walburn's] counsel was unable to send a copy of that filing to [Burnley] via U.S. Mail until the following Monday." (ECF No. 209 at 1.) Here, the Court finds Burnley's grievances without merit, particularly because Burnley himself "personally appeared at the front desk of the district court clerk's office on May 12, 2026 and . . . was given a copy of Mr. Abel [sic] filing on May 8, 2026." (ECF No. 208 at 2.) Therefore, the Court will take no action on this grievance, as Burnley was neither prejudiced by the delay nor was Walburn demonstrably out of compliance with this Court's Memorandum Order.

Having found Burnley's arguments regarding Walburn's fees to be without merit, the Court now turns to the assessment of Walburn's reasonable attorneys' fees.

## III.      STANDARD OF REVIEW

"Reasonableness is the touchstone of any award of attorneys' fees and expenses." *Banks v. City of Virginia Beach*, No. 2:24-CV-149, 2026 WL 500857, at *1 (E.D. Va. Feb. 23, 2026) (quoting *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 933 F. Supp. 2d 762,769 (E.D. Va.

2013)). The party seeking attorneys' fees bears the burden of demonstrating the reasonableness of the fee request and must provide adequate records in support of the request. *Id.* (citations omitted).

The Fourth Circuit has outlined a three-step framework for calculating reasonable attorneys' fees: (1) determine the lodestar fee; (2) subtract fees for hours spent on unsuccessful, unrelated claims; and (3) award some percentage of the remaining amount based on the degree of success of the prevailing party. *See McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013).

The lodestar fee is determined "by multiplying the number of reasonable hours expended times a reasonable rate." *Banks*, 2026 WL 500857, at *2 (citation omitted). In making this determination of reasonableness, the Fourth Circuit has adopted the twelve *Johnson* factors.[6] *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The first factor in the lodestar analysis, the number of hours reasonably expended, encompasses the first, second, and seventh *Johnson* factors. *See Page v. Virginia State Bd. of Elections*, No. 3:13-CV-678, 2015 WL 11256614, at *3 (E.D. Va. Mar. 11, 2015) (citations omitted). The second multiplier, the reasonable hourly rate, encompasses the third, fourth, fifth, sixth, and ninth *Johnson* factors. *Id*. However, "to the extent that any of the *Johnson* factors has already been incorporated into the lodestar analysis, such factor(s) should not later be considered a second time to make an upward or downward adjustment to the lodestar figure because doing so would inappropriately weigh such

---

[6] The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed of contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Banks*, 2026 WL 500857, at *2.

11

factor[s]." *Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 396 (E.D. Va. 2015), *aff'd*, 681 F. App'x 182 (4th Cir. 2017) (citations omitted).

## IV.    ANALYSIS

Walburn seeks an award for attorneys' fees in the amount of $9,410.46. The Court will determine a reasonable attorneys' fees award by assessing the two lodestar multipliers, reducing any award for unrelated and unsuccessful claims, and discussing the success of the prevailing party.

### A.    The Lodestar Fee

#### 1.    *The Number of Hours Reasonably Expended*

The Court must determine that the hours requested were "reasonably expended." *Banks*, 2026 WL 500857, at *3 (citation omitted). In Walburn's Motion for Attorneys' Fees, the requested fee award is based on a total of 50.2 billable hours for attorneys[7] and 1.4 billable hours for paralegal staff. (ECF No. 200 at 3.) Burnley does not make arguments opposing any specific hours identified on the attached "Matter Ledger Report," other than general remarks that the requested fees are "unreasonable and excessive." (ECF No. 202 at 1.) Nevertheless, the Court will engage a thorough review of Walburn's requested fees. *See Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 925 (E.D. Va. 2015) ("In addition to considering materials submitted by the parties, the court may, on its own, review the billing statement for reasonableness.") (citation omitted).

---

[7] Walburn's filings include the following hours broken down for each attorney: (1) Attorney Julie Palmer, 4.6 hours; (2) Attorney Benjamin Abel, 10.9 hours; (3) Attorney Austin Wade-Vicente, 25.5 hours; and (4) Attorney Soroush Moghaddassi, 9.2 hours. (ECF No. 200 at 3.)

12

Ultimately, the Court finds that 41.0 hours were reasonably expended by attorneys and 1.4 hours were reasonably expended by paralegal staff. The Court explains the reduction of 9.2 hours to the requested hours for attorneys below.

### a.    Billing of Clerical Tasks

The Court will reduce the attorneys' hours by 0.8 based on the improper billing of clerical tasks. *See, e.g.*, *Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504, 514 (W.D. Va. 2016) ("[T]he court notes that 'in this circuit . . . purely clerical tasks are ordinarily part of a law office's overhead, (which is covered in the hourly rate), [and] they should not be compensated for at all.'") (quoting *Two Men & A Truck/Int'l, Inc.*, 128 F. Supp. 3d at 929). Accordingly, the Court has identified the following clerical tasks that are not compensable:

1. Attorney Julie Palmer billed 0.1 hours on February 11, 2026 for "[p]repar[ing] and fil[ing] Notice of Appearance in district court." (ECF No. 206-1);

2. Attorney Austin Wade-Vincente billed 0.3 hours on March 2, 2026 for a call with the Court "to discuss permission and protocol for bringing [a] laptop and [a] USB drive into [the] Court." (*Id.*) He then billed 0.3 hours and 0.1 hours each on March 2, 2026 related to drafting and printing an electronic authorization form related to the evidentiary hearing. (*Id.*)

Each of these entries is similar to the non-compensable clerical tasks identified by other courts in this circuit. *See Brown*, 222 F. Supp. 3d at 514 ("Examples of clerical tasks include: filing documents with the court, printing pleadings . . . emailing documents, and making logistical telephone calls.") (citation omitted). These tasks should not be billed at attorney or paralegal rates.

*See Banks*, 2026 WL 500857, at *3. Therefore, the Court will reduce the attorneys' hours by 0.8 hours.[8]

### b.      Time Incurred for Evidentiary Hearing

Next, the Court addresses the hours billed by Attorneys Abel and Wade-Vicente with regard to the March 4, 2026 evidentiary hearing: 1.5 hours and 1.6 hours, respectively. (ECF No. 206-1.) Attorney Abel's entry states: "Attend court-mandated evidentiary hearing." (ECF No. 200-3.) Attorney Wade-Vicente's entry is slightly more descriptive: "Attend and argue at evidentiary hearing . . . on authentication of voice recording for the purpose of enforcing settlement agreement." (*Id.*) Based on the Court's records and the transcript from the evidentiary hearing, the hearing was less than thirty minutes long.[9] Absent further explanation for their accounting, the Court finds a reasonable deduction is necessary to each attorney's time spent at the roughly thirty-minute evidentiary hearing. *See, e.g.*, <u>Harwood v. Am. Airlines, Inc.</u>, No. 1:17-CV-0484, 2019 WL 3244200, at *4 (E.D. Va. May 16, 2019) ("[V]ague billing entries present the same problem as block billed entries - in both cases the court cannot 'weigh the hours claimed and exclude hours that were not reasonably expended.'") (quoting *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169,175 (4th Cir. 1994)). Factoring in that counsel were fifteen minutes early to the hearing and stayed fifteen minutes after the hearing to discuss issues related to this matter, the Court finds that billing 1.0 hours for each attorney is reasonable. Therefore, the Court will reduce the hours billed for the evidentiary hearing by 0.5 and 0.6, respectively, to Mr. Abel and Mr. Wade-Vicente.

---

[8] This reduction includes 0.1 hours for Attorney Julie Palmer and 0.7 hours for Attorney Austin Wade-Vicente.

[9] The court reporter's transcript available to the Court (ECF No. 194) states that the hearing began at 10:01 a.m. and concluded at 10:26 a.m.

c.        *Hours Billed for Withdrawn Motion to Enforce*

The Court will further reduce Walburn's requested attorneys' fees award based on his withdrawn Motion to Enforce (ECF Nos. 162, 166). By way of background, Walburn filed a Motion to Enforce the Settlement Agreement on August 27, 2024. (ECF No. 162.) By Order dated October 1, 2024, the Court directed Walburn to file additional briefing certifying that Walburn had satisfied the notice provision of the Settlement Agreement which requires that, prior to filing a motion to enforce, the moving party provides a notice of breach to the party against whom enforcement is sought. (ECF No. 164.) Shortly thereafter, Walburn filed a Motion to Withdraw the August 27, 2024 Motion to Enforce, which the Court granted. (ECF Nos. 165, 166.)

Walburn now seeks 7.3 hours for work incurred between July 30, 2024 and October 10, 2024, all of which are related to Walburn's withdrawn Motion to Enforce (ECF No. 162). (ECF No. 200-2.) While pre-litigation work can be compensable, *see, e.g.*, *Page*, 2015 WL 11256614, at *11, that work must be "reasonably expended on the litigation." *Id*. (citation omitted). Here, the Court finds the 7.3 hours related to Walburn's first motion to enforce is not compensable pre-litigation work. The Court notes that Walburn withdrew the Motion only after the Court entered an Order directing him to provide evidence that he complied with the very Settlement Agreement he then sought to enforce. Given that Walburn subsequently withdrew the Motion after the Court's order, the Court finds it unreasonable to require Burnley to pay for legal work done on a Motion that was facially deficient and which was voluntarily withdrawn before it became fully ripe for review.

Indeed, in the billing entry dated October 30, 2024, roughly three weeks after withdrawing the Motion to Enforce, Walburn's attorney billed 0.5 hours to "Determine pre-conditions required by Court/settlement agreement for bringing enforcement action of agreement against Plaintiff in

15

order to avoid dismissal of enforcement action." (ECF No. 200-2.) However, this work should have been done prior to filing the first Motion to Enforce and, had it been done at that time, then counsel might not have expended additional effort to re-brief and file the subsequent Motion to Enforce on April 16, 2025. Had counsel determined the "pre-conditions required" for bringing the enforcement action prior to filing it, then he would have avoided a majority of the 7.3 hours he expended on the withdrawn Motion to Enforce. Therefore, the Court will reduce the attorney hours by 7.3 to account for the hours billed by Attorney Soroush Moghaddassi related to the withdrawn Motion to Enforce.

### 2.    The Requested Hourly Rates are Reasonable

The remaining lodestar multiplier is the reasonable hourly rate. "This Court must . . . determine whether [Walburn's] fee request incorporates hourly rates that are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Lux v. Judd*, 868 F. Supp. 2d 519, 531 (E.D. Va. 2012) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Here, Walburn provided the following hourly rates for the attorneys involved in this settlement enforcement action. Attorney Julie Palmer ($195.00/hour); Attorney Benjamin Abel ($195.00/hour); Attorney Austin Wade-Vicente ($180.00/hour); Attorney Soroush Moghaddassi ($170.00/hour and $180.00/hour); and Paralegal Kendra Richman ($95.00/hour). (ECF No. 200 at 3; ECF No. 200-1 at 1-2.)

By affidavit, Walburn's counsel, Julie Palmer, states that these rates are "comparable to rates charged by Richmond lawyers of comparable experience in defense of similar cases." (ECF No. 200-1 at 1-2.) Further, Walburn cites a case in this division in which the court applied reasonable hourly rates for Richmond, Virginia that were significantly higher than the hourly rates

16

Walburn seeks here. (ECF No. 200 at 3 (citing *Page v. Va. State Bd. of Elections*, 2015 WL 11256614, at *5 (E.D. Va. Mar. 11, 2015)). While Burnley makes a general challenge to the overall award requested, he does not specifically challenge the hourly rates or provide any cogent argument related to the rates themselves. (*See* ECF No. 202 at 1 ("[Burnley] says that the attorney fees are 'unreasonable and excessive' . . . .").)[10]

Walburn does not provide additional affidavits from attorneys outside of the law firm Harmon, Claytor, Corrigan & Wellman regarding the prevailing market rates in Richmond for similar work. *See SS Richmond LLC v. Harrison*, No. 3:22CV405, 2023 WL 7646505, at *6 (E.D. Va. Nov. 14, 2023) (finding that the prevailing party failed to produce specific evidence of prevailing market rates, in part, because the prevailing party did not file any affidavits from attorneys outside of their own law firm). Therefore, the Court will "rely on its own knowledge to determine the reasonable hourly rates in this community for attorneys of comparable skill, experience and reputation." *Id*. at *7.

Other cases in this division dealing with the prevailing market rates in Richmond have found significantly higher hourly rates than those presented here to be reasonable, albeit from larger law firms and in cases involving more complex litigation. *See, e.g.*, *Sealed Plaintiff 1 v. Patriot Front*, No. 3:22-CV-00670, 2026 WL 917477, at *4 (E.D. Va. Mar. 31, 2026) (concluding that $400 and $600 hourly rates for associates and partners in Richmond, Virginia were reasonable in a complex civil rights litigation); *SS Richmond LLC*, 2023 WL 7646505, at *7 (concluding that $400 and $650 hourly rates for associates and partners in Richmond, Virginia were reasonable in

---

[10] Burnley incorrectly relies on *Colorado Bankers Life Ins. Co. v. Academy Financial Assets, LLC*, 60 F.4th 148 (2023) (limiting attorneys' fees to fifteen percent (15%) of the debt sued for under a specific North Carolina statute) to the present action. This matter is decided on Virginia law, not North Carolina law.

a complex business dispute); *Jones v. Southpeak Interactive Corp. of Delaware*, No. 3:12CV443, 2014 WL 2993443, at \*7-8 (E.D. Va. July 2, 2014), *aff'd*, 777 F.3d 658 (4th Cir. 2015) (finding that $250 and $420 hourly rates for associates and partners in Richmond, Virginia were reasonable in an employment discrimination action). While the previously cited cases involved issues more complex than this matter, the Court nevertheless finds Walburn's requested rates are reasonable since Walburn seeks an award based on hourly rates that are significantly below what this Court has previously found to be reasonable.

Applying the *Johnson* factors related to this multiplier (factors one, two, three, eight, and nine) supports the reasonableness of the hourly rates sought by Walburn. Walburn's counsel expended considerable time since 2024 seeking to enforce the Settlement Agreement (factor one). While there were not necessarily novel issues involved (factor two), the enforcement action required moderate skill to identify and prove that Burnley was the individual who placed the call to Walburn's employer in violation of the Settlement Agreement (factor three). Walburn's counsel obtained a positive result for their client (factor eight) and have demonstrated experience and ability in doing so (factor nine).

Therefore, for the second lodestar figure, the Court will apply the reasonable hourly rates provided by Walburn.

18

3.    *The Lodestar Summary*

The Court's lodestar fee, **$7,445.00** is based on the calculations reflected in the table below.

| Attorney Name | Hours Requested | Hours Awarded | Rate | Total |
|---|---|---|---|---|
| Julie S. Palmer | 4.6 hours | 4.5 hours[11] | $195/hr | $877.50 |
| Benjamin P. Abel | 10.9 hours | 10.4 hours[12] | $195/hr | $2,028.00 |
| Austin T. Wade-Vicente | 25.5 hours | 24.2 hours[13] | $180/hr | $4,356.00 |
| Soroush N. Moghaddassi | 7.8 hours (2024) 1.4 hours (2025) | .5 hours (2024)[14] 1.4 hours (2025) | $170/hr $180/hr | $85.00 $252.00 |
| Paralegal Kendra Richman | 1.4 hours | 1.4 hours | $95/hr | $133.00 |
| **Totals** | 50.2 attorney hours / 1.4 paralegal hours | 41.0 attorney hours / 1.4 paralegal hours | - | **$7,731.50** |

**B.    Reduction for Unrelated and Unsuccessful Claims**

There were no unsuccessful claims as Walburn prevailed on his Motion to Enforce the Settlement Agreement, therefore there will be no reduction based on this step. *See, e.g.*, *Torres-Baez v. Giovenco-Montano*, No. 2:20CV580, 2022 WL 15482678, at *11 (E.D. Va. Oct. 4, 2022), *report and recommendation adopted*, No. 2:20-CV-580, 2022 WL 14975888 (E.D. Va. Oct. 26, 2022) ("Where the [prevailing party's] claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for

---

[11] Reduced by 0.1. *See supra* note 8 and accompanying text.
[12] Reduced by 0.5 for the evidentiary hearing, *see supra* Section IV.A.1.b.
[13] Reduced by 0.7 for clerical tasks, *see supra* Section IV.A.1.a;; and 0.6 for the evidentiary hearing, *see supra* Section IV.A.1.b.
[14] Reduced by 7.3 hours for the withdrawn motion to enforce. *See supra* Section IV.A.1.c.

services on the unsuccessful claim.") (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)).

### C.    Degree of Success

The final step for the Court is to determine "what percentage of the lodestar figure to award based on the degree of success enjoyed by the [prevailing party]." *Page*, 2015 WL 11256614, at *13 (quotation and citations omitted). This determination is made by "comparing the relief sought to that actually obtained." *Id*.

In his Motion to Enforce, Walburn requested that the Court: (1) impose sanctions against Burnley in the amount of $5,000; (2) assess costs and fees against Burnley; and (3) enter an order barring [Burnley] from engaging in future violations of the Settlement Agreement. (ECF No. 168, at 5.) By Memorandum Opinion and the accompanying Order dated March 18, 2026, the Court found that Burnley had "not only circumvented the [S]ettlement [A]greement in bad faith, but willfully breached it." (ECF No. 195 at 15.) As such, the Court determined it would assess reasonable attorneys' fees and costs against Burnley, to be determined through a formal fee petition by Walburn. (ECF Nos. 195, 196.)

Walburn obtained the only relief that the Settlement Agreement provided for: attorneys' fees and costs. (*See* ECF No. 168-1, ¶ 9.) The Settlement Agreement did not provide for liquidated damages, and the Court may not impose liquidated damages *sua sponte* in the absence of such a provision. *See, e.g.*, *Golding v. Floyd,* 261 Va. 190, 192 (2001) ("The guiding light [of contract interpretation] . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares.") (citation omitted).

As Walburn was successful in proving Burnley violated the Settlement Agreement and was awarded the only remedy available to him, the Court finds that no further reduction is necessary based on the degree of success analysis. The Court is satisfied that Walburn "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Torres-Baez*, 2022 WL 15482678, at *12 (citations omitted).

### D.    Litigation Expenses

Walburn seeks $86.96 in expenses related to parking and mileage. (ECF No. 200-2.) These expenses are identified on the "Matter Ledger Report" and supported by affidavit. (ECF No. 200-1 at 2.) Burnley has not challenged these expenses. Given the parties' Settlement Agreement that provides for the prevailing party to recover expenses, the Court awards Walburn $86.96 in expenses.

### V.    CONCLUSION

For the reasons stated above, the Court will GRANT IN PART and DENY IN PART Walburn's Motion for Attorneys' Fees (ECF No. 199) and make a downward adjustment to the requested award. The Court hereby: (1) awards reasonable fees and litigation expenses in the amount of **$7,818.46** in favor of Walburn and against Burnley; and (2) denies Burnley's request for judicial recusal.

An appropriate Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to John Rodgers Burnley.

/s/ MRC
_____
Mark R. Colombell
United States Magistrate Judge

Date: July 16, 2026
Richmond, Virginia

21